J-S29022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTONIO AMBERT | |
| Appellant | No. 1619 MDA 2013 |

Appeal from the Judgment of Sentence of August 9, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0005614-2012

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 22, 2014**

Antonio Ambert appeals the August 9, 2013 judgment of sentence. We affirm.

On September 13, 2012, Ambert was charged by criminal complaint with indecent assault of a person less than thirteen years of age, corruption of the morals of a minor, and unlawful contact with a minor.[1] The charges stemmed from Ambert's alleged sexually inappropriate contact with S.K., who was eleven years old at the time of the offense.

Prior to trial, the Commonwealth filed a petition to admit the testimony of various witnesses who would testify to hearsay statements made to those

---

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     18 Pa.C.S. §§ 3126(a)(7), 6301(a)(1)(ii), and 6318(a)(1), respectively.

individuals by S.K., pursuant to the tender years exception to the general bar on hearsay evidence at trial.[2] After various amendments to the Commonwealth's petition, the trial court held hearings on May 13 and 14, 2013. Although multiple witnesses testified at the two-day hearing, presently, Ambert challenges only the admissibility of the testimony of Detective Sonja Stebbins of the Lancaster City Bureau of Police.[3]

In 2012, Det. Stebbins was assigned to the Special Investigations Unit, which focused upon, *inter alia*, sex crimes perpetrated on children by adults. In August of 2012, Det. Stebbins was informed by another police officer that S.K.'s mother had reported that S.K. and G.K. were in the custody of their father and that the mother was concerned that the children were not going to be returned to her. After some effort, Det. Stebbins was able to locate and speak to the children's father. The father told Det. Stebbins that he did not want to return the children to Lancaster, because he was upset that his daughter had been touched inappropriately by someone who was working in the mother's house. The father initially refused to return S.K. to her mother because nothing had been done in terms of investigating and arresting the

---

[2]   *See* 42 Pa.C.S.A. § 5985.1, discussed in more detail *infra*.

[3]   G.K, who is S.K.'s brother, S.K.'s mother, S.K.'s aunt, and Mary Hayle, a child advocate with the Lancaster County Children's Alliance, also testified at the hearing to various statements that S.K. made to them regarding the incident in question. However, as noted, Ambert does not challenge the admissibility of the testimony of any of these witnesses before this Court.

person who molested S.K. Det. Stebbins explained to S.K.'s father the process that she would then follow to investigate the incident, now that she had knowledge of it. She informed him that the process normally begain with an interview of S.K.

S.K.'s father, though still upset that S.K.'s mother did not report the incident to the police, told Det. Stebbins that she could talk directly to S.K., and he immediately handed S.K. the phone. Det. Stebbins immediately recognized by voice that S.K. was a young girl. S.K. reported to Det. Stebbins that, on the day in question, she was alone in her bedroom putting on a pair of capri-style pants when she noticed that the button was broken. At that point, a man, whom she later identified as Ambert, entered her room and told her to approach him. S.K. stated that Ambert rubbed her above her vagina and commented to S.K. about the fact that she had pubic hair. At that point in the interview, S.K. got quiet and did not want to tell Det. Stebbins any more about the incident.

At the conclusion of the hearing, the trial court noted Ambert's objection to Det. Stebbins' testimony, but nonetheless held that S.K.'s hearsay statements proffered by Det. Stebbins were admissible under the tender years exception.

From May 15 through May 17, 2013, Ambert was tried in front of a jury on the aforementioned charges. What follows is a summary of the evidence presented at trial.

On a day in June of 2012, S.K. was in the attic bedroom in her house in Lancaster, Pennsylvania folding clothes for her grandmother. At the time, Ambert was in the home, as was often the case, to do carpentry work on various parts of the house. Ambert entered the attic bedroom to tell S.K. that dinner was ready, and noticed that S.K.'s button was broken on her capri pants. Ambert attempted to fix the button, but to no avail. However, while doing so, Ambert looked at S.K.'s underwear. Ambert told her that he liked her underwear, and that they were sexy. S.K. testified that Ambert then pulled her underwear back, reached his hand into her underwear, and rubbed the pubic hair near her vaginal area with his finger and his thumb two or three times. S.K. testified that she walked away from him, but that Ambert followed and rubbed her vaginal area another time.

Thereafter, S.K. went down a flight of stairs to her mother's bedroom. Ambert followed her there and took pictures of him and her on his cellular telephone. S.K. then went further downstairs and told her brother, G.K., what had happened. G.K. told her to report the incident to their mother. Instead, S.K. told her aunt about the incident. S.K. also sent a text message to her mother about the incident.

G.K., S.K.'s brother, testified that, on the day in question, he was in his bedroom when S.K. appeared looking shocked and surprised. G.K. stated that S.K. told him that Ambert came into her room while she was changing, and would not leave when S.K. instructed him to do so. S.K. told

G.K. only that Ambert looked down into her panties, and then she ran away from him. She did not tell G.K. that Ambert had touched her.

S.K.'s aunt testified that she had a very close relationship with S.K. Shortly after the incident with Ambert, S.K. called her aunt and left a message informing the aunt that they had to speak about something important. The aunt testified that, on the message, S.K. sounded scared and anxious. When the aunt returned S.K.'s call, S.K. told her that Ambert had put his hand in her pants after attempting to fix her button. S.K. explained to the aunt that Ambert also commented on the presence of pubic hair on such a young girl.

S.K.'s mother testified that, on the day in question, she was at work when she received a troubling text message from S.K. about Ambert's behavior. The mother completed her work day and then went home to speak with S.K. S.K. initially acted embarrassed, and did not want to talk to her mother. The mother testified that S.K. appeared to be very sad. S.K. eventually told her mother that Ambert offered to help her fix the button on her pants, but then proceeded to touch her inappropriately. Based upon S.K.'s demeanor at the time, the mother did not press S.K. for further details. The mother did not contact the police. In fact, the police were not contacted until August, when the children were with their father.

Det. Stebbins also testified at trial. She testified substantially to the same sequence of events as to which she had testified at the tender years hearing, as detailed above.

At the conclusion of the jury trial, Ambert was convicted of all of the charges. On August 9, 2013, the trial court sentenced Ambert to an aggregate sentence of one to five years' incarceration. On September 6, 2013, Ambert filed a notice of appeal. On September 10, 2013, the trial court directed Ambert to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 6, 2013, Ambert filed a timely statement. On November 20, 2013, the Commonwealth filed a response to Ambert's statement. On December 20, 2013, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Ambert raises the following issue for our consideration: "Did the trial court err in admitting the testimony of Detective Stebbins regarding S.K.'s alleged statement to her via telephone, where the circumstances of S.K.'s statement did not provide sufficient indicia of reliability as required by 42 Pa.C.S. § 5982.1?" Brief for Ambert at 5.

"Generally, the admissibility of evidence is a matter of trial court discretion and a ruling thereon will only be reversed upon a showing that the trial court abused that discretion." *Commonwealth v. Malloy*, 856 A.2d 767, 775 (Pa. 2004). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Commonwealth v. Barnett*, 50 A.3d 176, 182 (Pa. Super. 2012) (citing *Commonwealth v. Brougher*, 978 A.2d 373, 376 (Pa. Super. 2009)).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999). As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. *Commonwealth v. Dargan*, 897 A.2d 496, 500 (Pa. Super. 2006) (citations omitted). The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. *Commonwealth v. Rush*, 605 A.2d 792, 795 (Pa. 1992). However, certain exceptions "have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (citing *Commonwealth v. Bean*, 677 A.2d 842, 844 (Pa. Super. 1996)).

"[T]he Tender Years [Hearsay Act] creates an exception to the hearsay rule in recognition of the fragile nature of the victims of childhood sexual abuse." *Commonwealth v. G.D.M.*, 926 A.2d 984, 988 (Pa. Super. 2007). Section 5985.1, also known as the Tender Years Hearsay Act, *see Commonwealth v. Walter*, 93 A.3d 442, 444-45 (Pa. 2014), provides, in pertinent part, the following:

> **(a) General rule.--**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping),

- 7 -

31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and **circumstances of the statement provide sufficient indicia of reliability**; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a) (emphasis added).[4]

The "admissibility of this type of hearsay is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying." *Commonwealth v. Delbridge*, 855 A.2d 27, 45 (Pa. 2003). Examples of the various indicia of reliability include: "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." *Id.* at 46; *see also Walter*, 93 A.3d at 451; *Commonwealth v. Kriner*, 915 A.2d 653, 657 n.3 (Pa. Super. 2007).

Ambert contends that S.K.'s statements to Det. Stebbins lacked sufficient indicia of reliability to satisfy the tender years exception.

---

[4] It is undisputed that S.K. was under the age of 12, and that she testified at trial.

Specifically, Ambert points out that the version of events that S.K. reported to G.K. differed from the version that she presented to Det. Stebbins. Additionally, Ambert notes that Det. Stebbins was investigating S.K.'s father for a possible kidnapping, which provided the father with a motive to pressure S.K. into "embellishing the details" of the incident with Ambert. *See* Brief for Ambert at 13. Finally, Ambert maintains that, because the conversation took place over the telephone, Det. Stebbins was not able visually to observe the interaction between S.K. and her father to determine whether the father was, in fact, pressuring S.K. into embellishing her story. We disagree.

The above-recited legal standards require us to consider the circumstances of the hearsay statement to determine whether sufficient indicia of reliability surrounded the statement to render it trustworthy. Considering the factors set forth in *Delbridge*, and adopted in *Walter*, *Barnett*, and *Kriner*, we conclude that the statement was admissible.

S.K.'s statement to Det. Stebbins was not spontaneous. Indeed, S.K.'s father put her on the telephone with the detective for the purpose of explaining to the detective what Ambert had done to her. However, that the statement was not spontaneous does not, *ipso facto*, mean that the statement was pressured or compelled. The record is devoid of any evidence to support Ambert's claim that S.K.'s father pressured S.K. to embellish the statement. Ambert's argument is speculative, and, consequently, fails.

Ambert is correct in observing that S.K.'s statement to Det. Stebbins differs from the story that she told to her brother, G.K. S.K. told Det. Stebbins that Ambert placed his hand into her underwear, rubbed her vaginal area with his fingers, and commented on the presence of pubic hair in such a young girl. To G.K., S.K. stated only that Ambert had caught her changing clothes, looked down her underwear, and would not leave when S.K. asked him to do so. Although these two stories differ, S.K.'s statement to Det. Stebbins was consistent with what S.K. told everyone else involved in the case, including her mother and her aunt. Thus, even though S.K. told slightly different versions of the events, the version that she provided to Det. Stebbins was consistent with all of the other versions, including that version as to which S.K. testified at trial. We believe that the circumstances evinced the reliability of the Stebbins version.

We also discern from the record no motive for S.K. to fabricate or embellish a story against Ambert. Moreover, Ambert does not argue in his brief that S.K. had any such motive. When speaking to Det. Stebbins, S.K. did not use any words that we might fairly consider to be unexpected from an eleven-year-old girl such that we might perceive them as indicia of fabrication. Finally, we note that, although Det. Stebbins believed S.K. to be upset and quiet, there was no evidence presented at trial or at the hearing that S.K.'s mental state was in such a diminished or confused condition that her recitation of the facts to Det. Stebbins was untrustworthy or unreliable.

Accordingly, the record supports the trial court's conclusion that S.K.'s statement to Det. Stebbins contained sufficient indicia of reliability to render the statement admissible under the tender years exception to the hearsay rule. Hence, we discern no abuse of discretion by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2014