J-S02023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILMER COLON | |
| Appellant | No. 147 EDA 2016 |

Appeal from the Judgment of Sentence Entered August 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008721-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                      **FILED MAY 25, 2017**

Appellant Wilmer Colon appeals from the August 5, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his jury convictions for third degree murder, possession of an instrument of crime ("PIC"), firearms not to be carried without a license, and carrying a firearm in public in Philadelphia.[1]  Upon review, we affirm.

The facts and procedural history underlying this case are undisputed. As summarized by the trial court:

> [O]n April 10, 2013, during which Appellant also known as "Omar" fatally shot John Jamieson ("Jamieson") also known as "Stacks" multiple times on the corner of Perkiomen and Wylie Streets in the City and County of Philadelphia, Pennsylvania. Appellant, Pablo Burgos ("Burgos") also known as "Littles," Burgos' brother Luis Roman ("Roman"), Angel Mendez ("Mendez") also known as "Ace," and Jamieson were friends

---

[1] 18 Pa.C.S.A. §§ 2502(c), 907(a), 6106(a)(1), and 6108, respectively.

prior to the incident. In April of 2013, Appellant, Roman, and Burgos lived in an apartment on Torresdale and Magee Avenues that was leased by Burgos' girlfriend, Crystal Elliott ("Elliott"). The friends would spend significant amounts of time at the Torresdale apartment playing a PlayStation 3® video game console that belonged to Appellant. On the day of the incident, Appellant discovered that the PlayStation 3® was missing.

Appellant, who was with Burgos, Roman, and Elliott, called Mendez that same evening asking him to return to the house to talk about the missing video game console. Appellant was unable to reach Jamieson. It was decided among Appellant, Burgos, Roman, Mendez, and Elliott that Mendez had not taken the PlayStation 3® and the group went to confront Jamieson. Someone was able to reach Jamieson by phone and learned Jamieson was at his grandmother's house at 1738 Wylie Street. At the house was Jamieson's grandmother, Diane Jamieson ("Diane"), Jamieson's uncle, Robert Jamieson ("Robert") and Jamieson's mother. Appellant, Burgos, Mendez, Elliott, and Roman got into Roman's green Honda and Appellant directed Elliott to Jamieson's location. Upon arrival, Jamieson was called outside and Appellant exited the car to meet Jamieson at the corner of Perkiomen and Wylie Streets.

Diane awoke to hear her grandson arguing with someone outside. Jamieson yelled, "you want to shoot me man, that's crazy," and she heard four (4) shots. She went outside and saw Jamieson running from the corner of Perkiomen and Wylie Streets back toward her home. Jamieson collapsed into Robert's arms and was carried inside the house. Jamieson said, "Omar did it, Omar shot me" and mentioned another name, Littles. Jamieson also said the person who shot him was wearing a hooded sweatshirt featuring the words "rise and grind" and the person had tattoos on his hands that read "grind hard." Sergeant David DeCrosta ("Sergeant DeCrosta") responded to the scene and was told by Jamieson, "I was shot by my friend, Omar Vega Colo . . . he's in a green Honda . . . he's probably going to the area of Torresdale and Magee. That's where he lives." Sergeant DeCrosta shared this information over the police radio.

Immediately after shooting Jamieson, Appellant had returned to the green Honda and Elliott drove the group back to the Torresdale apartment where Appellant gathered clothes, put them in a hamper and got into Elliot's black Honda with Mendez. Police officers intercepted Appellant and Mendez in the green Honda on the 6400 block of Hegerman Street. At that time, Appellant was wearing a black hooded sweatshirt featuring the words "rise and grind" and officers observed that Appellant had a tattoo of the words "grind hard" on his hand. Appellant's sweatshirt was submitted for analysis and found to have gunshot residue on front and back of the right sleeve, on the left sleeve and front right half of the garment. A twelve (12) gauge

shotgun with a shell in the chamber was recovered from the laundry basket.

Jamieson was pronounced dead at 4:01 A.M. on April 11, 2013 at Hahnemann University Hospital. An autopsy was performed by Assistant Medical Examiner Dr. Aaron Rosen who determined that the cause of death was multiple gunshot wounds and the manner of death was found to be Homicide. Jamieson was shot one (1) time in the right side of the chest, where the bullet went through the liver, the inferior vena, and left kidney; one (1) time in the right side of the upper back where the bullet traveled through the shoulder blade and fractured a rib; and one (1) time in the left arm which fractured the humerus. Three (3) bullets were recovered from Jamieson's body and submitted to the Firearms Identification Unit for analysis, where they were all found to be fired from the same gun. The gun used to shoot Jamieson was never recovered.

Trial Court Opinion, 6/17/16, at 2-4. Appellant was charged with the above-mentioned crimes. His case proceeded to a jury trial, following which he was found guilty of third degree murder, PIC, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia. On August 5, 2015, the trial court sentenced Appellant to 20 to 40 years' imprisonment for third degree murder and a consecutive term of two and one-half to five years' imprisonment for carrying a firearm without a license. N.T. Sentencing, 8/5/15, at 21-22. No additional penalty was imposed for the remaining convictions. *Id.* Appellant filed post-sentence motions, which were denied by operation of law on December 14, 2015. Appellant timely appealed to this Court. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, raising three evidentiary issues:

[I.] Did the trial court err in precluding the introduction of testimony and exhibits regarding Instagram posts made by Pablo Burgos which indicated that he was in fact the shooter in the incident in question?

- 3 -

[II.] Did the trial court err in refusing to permit Talia Ocasio to testify regarding the content of Instagram posts received from Luis Roman when said posts had already been introduced into evidence during Luis Roman's testimony?

[III.] Did the trial court err in precluding [Appellant] from cross-examining Det. Harkins regarding the fact that one of the detectives who questioned [Appellant] had been arrested for a *crimen falsi* offense?

Rule 1925(b) Statement, 1/26/16, at 1-2. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellant's evidentiary challenges do not merit relief.

On appeal, Appellant repeats the same three issues for our review.

It is settled:

[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Tyson***, 119 A.3d 353, 357-58 (Pa. Super. 2015) (internal citations omitted). Moreover, an appellant bears a "heavy burden" to show that the trial court has abused its discretion. ***Commonwealth v. Christine***, 125 A.3d 394, 398 (Pa. 2015).

Appellant first argues that the trial court abused its discretion in excluding as hearsay any reference to Instagram posts authored by Burgos. We disagree.

Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted in the statement." ***Commonwealth v. Kuder***, 62 A.3d 1038, 1055 (Pa. Super. 2013) (citation omitted), ***appeal denied***,

114 A.3d 416 (Pa. 2015). Hearsay is generally deemed unreliable because "the declarant is not before the trier of fact and cannot be challenged as to the accuracy of the statement." **Commonwealth v. Rush**, 605 A.2d 792, 795 (Pa. 1992) (citation omitted).

Instantly, Appellant sought to introduce at trial the testimony of his cousin who would have testified that one week prior to trial, Burgos sent him text messages, using a pre-paid cell phone. N.T. Trial, 5/26/15, at 6-7. The messages indicated that Appellant should "stick with the game plan" and that for doing so, he would receive "bread," a specialized colloquialism for a monetary reward. **Id.** at 6, 9. As the trial court reasoned:

> Even if these messages could have been authenticated,[2] the text [messages] did not fit under any exception to the hearsay rule and were inadmissible. These messages were offered to support the defense theory that Burgos was the actual shooter and that a plan existed for Appellant to accept blame for Jamieson's death. The evidentiary value of the text messages depended entirely on the truth of their content.

Trial Court Opinion, 6/17/16, at 5. We cannot conclude that the trial court abused its discretion in excluding any reference to text messages allegedly sent by Burgos to Appellant's cousin one week prior to trial.[3]

_____

[2] Based on our disposition of this issue, we, like the trial court, decline to decide Appellant's authentication argument.

[3] Insofar as Appellant argues that the text messages were not offered for the truth of the matter asserted, but rather "were offered to demonstrate Burgos' state of mind, in particular his consciousness of guilt, such argument is waived because he failed to raise it before the trial court or in his Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on

*(Footnote Continued Next Page)*

Appellant next argues that the trial court abused its discretion in disallowing "Thalia Ocasio to testify regarding the content of Instagram posts received from [Roman] when said posts already had been introduced into evidence during [Roman's] testimony."[4]  Appellant's Brief at 13.  We disagree based on the trial court's sound reasoning:

> During Roman's cross-examination, Appellant's trial counsel asked him to verify his username and profile on Instagram and verify a series of direct messages he sent to [Ms.] Ocasio. (N.T. [Trial,] 5/21/15[,] at 197-203).  Roman complied and explained each of his responses in detail. ***Id.*** Defense counsel questioned Roman extensively on the meanings of each message sent by Roman and counsel asserted that the contents of the messages reflected that Burgos was the shooter. ***Id.*** [Ms.] Ocasio was allowed to verify that she did in fact participate in the conversation and that the messages as depicted were complete. (N.T. [Trial,] 5/26/15[,] at 119-124).  [Ms.] Ocasio's potential testimony of the contents of the messages sent by Roman would have been unnecessarily duplicative.

Trial Court Opinion, 6/17/16, at 6.  It is settled that:

> Evidence may be excluded if its probative value is outweighed by the "needless presentation of cumulative evidence."  Pa.R.E. 403.  We define cumulative evidence as "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 989 (Pa. Super. 2007) (quoting

*(Footnote Continued)* _____

appeal"); ***Commonwealth v. Hanford***, 937 A.2d 1094, 1098 n.3 (Pa. Super. 2007) (noting that "new theories ordinarily cannot be raised for the first time on appeal[.]"); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived").

[4] Appellant's argument that the trial court should have admitted Ms. Ocasio's testimony about Roman's statements under Pa.R.E. 613 is waived because he failed to raise it before the trial court or in his Rule 1925(b) statement. ***See supra*** at n.3.  Similarly, Appellant's argument that the trial court should have allowed Ms. Ocasio to testify for purposes of establishing "the meaning of the conversation" is waived for the same reasons. ***See id.***

- 6 -

Black's Law Dictionary, Seventh Edition, at 577), ***appeal denied***, []944 A.2d 756 ([Pa.] 2008).

***Commonwealth v. Flamer***, 53 A.3d 82, 88 n.6. (Pa. Super. 2012). Given the trial court's sound reasoning and consistent with the foregoing principles of law, we conclude that the trial court did not abuse its discretion in ruling that Ms. Ocasio's testimony about the Instagram messages received from Roman would have been cumulative. Appellant is not entitled to relief.

Finally, Appellant argues that the trial court abused its discretion in disallowing Appellant "from cross-examining Detective Harkins regarding the fact that one of the detectives who questioned [Appellant] had been arrested for a *crimen falsi* offense." Appellant's Brief at 14.

Instantly, we note that Appellant confessed to Detective John Harkins after being ***Mirandized***.[5] At trial, Appellant asked Detective Harkins whether his former colleague Detective Ronald Dove was charged with any crimes. N.T. Trial, 5/22/15, at 204. The Commonwealth objected. The trial court sustained the objection. Our review of the trial transcript reveals that Appellant's reasons for asking this question are unclear. Nonetheless, as the Commonwealth points out, "even on appeal," Appellant does not allege that "former Detective Dove's arrest had anything to do with obtaining a

_____

[5] ***Miranda v. Arizona***, 384 U.S. 436 (1966) (holding that statements obtained from defendants during interrogation in police-dominated atmosphere, made without full warning of applicable constitutional rights, were inadmissible as having been obtained in violation of Fifth Amendment privilege against self-incrimination).

confession from [Appellant] or anyone else related in any other way to the facts of the instant case." Commonwealth's Brief at 13-14. Indeed, Appellant argues only that he was denied an opportunity to conduct impeachment with *crimen falsi* offenses. Appellant's Brief at 14. As the trial court and the Commonwealth aptly observe, former Detective Dove was not a witness in Appellant's trial and, importantly, the former Detective's veracity was not at issue here. More important, the trial court noted that "the *crimen falsi* behavior defense counsel was attempting to highlight was **an arrest**, not a conviction, and that behavior was attached to a Detective who was not a witness in Appellant's trial." Trial Court Opinion, 6/17/16, at 7 (emphasis added). Under Rule of Evidence 609, *crimen falsi* evidence resulting only from a **criminal conviction** may be admitted at trial. Pa.R.E. 609(a) ("For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement."). Accordingly, Appellant's argument does not merit relief.[6]

Judgment of sentence affirmed. Petition to withdraw denied.

---

[6] During the pendency of this appeal, on May 15, 2017, Appellant's counsel filed a petition to withdraw indicating that he will be assuming a new position with the Office of Attorney General commencing June 5, 2017. We deny the motion. Counsel shall immediately consult with Appellant as to whether he wishes to appeal further his case, and if so, he shall immediately petition the trial court for appointment of new counsel.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2017