605 A.2d 792

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Larry RUSH, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1991.

Decided March 17, 1992.

Charles J. Cunningham, Philadelphia, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., for appellee.

## OPINION OF THE COURT

LARSEN, Justice.

Following a jury trial, appellant, Larry Rush, was convicted of aggravated assault and possessing an instrument of crime. He was sentenced to serve an aggregate prison term of 12 and ½ to 25 years. Appellant appeals from the order of the Superior Court, 398 Pa.Super. 648, 573 A.2d 623, affirming the judgments of sentence imposed by the Court of Common Pleas of Philadelphia County.

The facts giving rise to his convictions are as follows. On May 4, 1987, Edna Nitterauer was working at a Philadelphia bookstore when a man entered the store. The store owner asked if the man needed assistance, but the man told him he only wanted to browse. Five minutes later, Nitterauer approached the man and asked him if he required assistance. They engaged in a casual conversation about hobbies, and the man said that his hobby was making

picture frames out of cigarette boxes. The man then asked if the store carried any books concerning heart ailments. Nitterauer showed the man one book, but after leafing through it, he asked for another book. As Nitterauer reached for another book, the man stabbed her eight times in the arm and back. Nitterauer tried to pull away and call for help as the man slammed her into a door and on the floor. The man eventually fled, and Nitterauer succeeded in calling for emergency help.

John Roman, who owned the gas station next door, watched as the rescue squad arrived. As he observed the activity, Roman saw a man fitting the assailant's description walk out of an alley between the two buildings and cross the street. Both Nitterauer and Roman gave their descriptions of the man to the police.

Based on these descriptions, the police produced a photo array, which did not include a photo of appellant. Nitterauer and Roman viewed the array separately and neither one identified the assailant. On May 12, 1987, a second photo array, which included appellant's photo, was presented separately to Nitterauer and Roman. This time, both of them identified appellant.

Appellant was subsequently arrested. After a two-day trial, the jury found appellant guilty of aggravated assault and possession of an instrument of crime. Appellant appealed to the Superior Court, which affirmed.

Appellant's first allegation of error involves the trial judge's answer to a written question presented to the judge by the jury during its deliberations. Appellant contends that the judge's answer went beyond the scope of the jury's question and coerced the jury into returning a guilty verdict. The jury posed the following question in a note to the trial judge:

Judge McCrudden, as foreperson, I have been asked to clarify a matter of procedure regarding our rendering a verdict with a recommendation. We would like to know if it's appropriate at the time of rendering a verdict that a psychiatric assessment and treatment be strongly recom-

mended. We would like the answer to this question in private....

(T.T., 2/19/88, p. 2). In response and over appellant's objection, the trial judge gave the following oral instruction:

Jurors, first, let me explain to you that I cannot answer anything in private. It has to be—my answer has to be given in open court.

Now, let me take the—jurors, it's really two questions as I see it. One, I would like to know if it's appropriate at the time of rendering a verdict if you can make a recommendation. Jurors, I told you at the outset of the trial it's the jury's function to determine whether or not the Commonwealth proved the man guilty or not. Penalty and things of that nature are left to the trial judge.

So you cannot make a recommendation. You will determine and answer and sign the verdict sheet. When you return the verdict it will be either guilty or not guilty.

In view, I think you're concerned about what happens afterwards. Let me explain the procedure. *If you find the defendant guilty of the charges, then the first thing I will do is order a psychiatric evaluation and a presentencing investigation. That's automatic. If you return a verdict of not guilty, then the defendant is completely free on the charges, free from the charges of assaulting the victim Edna Nitterauer and possessing an instrument of crime....*

(T.T., 2/19/88, pp. 7–8) (emphasis added).

 In reviewing the remarks of a trial judge, we begin by noting that every unwise or irrelevant remark made in the course of a trial by a judge does not compel the granting of a new trial. *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). "However a new trial is required when the judge's remark is prejudicial; that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Hammer,* 508 Pa. 88, 100, 494 A.2d 1054, 1060 (1985).

On review, the Superior Court determined correctly that the trial judge's remarks were prejudicial. Nevertheless the Superior Court concluded that "any prejudice that may have inured to appellant was harmless beyond a reasonable doubt." (Mem.Op. at p. 4). In coming to this conclusion, the Superior Court reasoned that:

Appellant's sole defense in this case was mis-identification. By the tenor of its question, the jury had already considered and rejected this defense, concluding that appellant had indeed been the man in the book store, because the jury wanted to recommend that appellant be given psychiatric help.... It is only if they believed that he was Ms. Nitterauer's assailant that they would have been concerned with securing psychiatric help for him....

(Mem.Op. at p. 5). Thus, because it believed that the jury had already determined appellant's guilt, the Superior Court found the trial judge's remarks to be harmless beyond a reasonable doubt. The Superior Court, however, had no real way of knowing that the jury had already determined appellant's guilt. We never know the route a jury takes to arrive at their destination, nor are we permitted to know.

An error is harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. *Commonwealth v. Turner*, 499 Pa. 579, 584, 454 A.2d 537, 540 (1982); *Commonwealth v. Story*, 476 Pa. 391, 405, 383 A.2d 155, 162 (1978). An error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. *Id.*, 476 Pa. at 408, 383 A.2d at 164. Thus, "for a reviewing court to conclude that an error is harmless, it must be convinced *beyond a reasonable doubt* that the error did not contribute to the verdict." *Commonwealth v. Baez*, 494 Pa. 388, 431 A.2d 909 (1981) (emphasis added). The burden of establishing that an error is harmless beyond a reason-

able doubt rests with the Commonwealth. *Commonwealth v. Story,* 476 Pa. at 406, 383 A.2d at 162, n. 11.

■ We are not convinced beyond a reasonable doubt that the trial judge's remarks in the herein case did not contribute to the verdict. It does not necessarily follow that because the jury appeared to be concerned about psychiatric care for the appellant that the jury had already concluded that appellant was indeed guilty. It is reasonable that the jury simply could have been wondering if it could make a recommendation as to punishment *in the event* it found appellant guilty. Alternatively, the jury may have been unconvinced of appellant's guilt beyond a reasonable doubt but would have settled on a guilty verdict if petitioner were sentenced to a mental hospital instead of a prison. Either way, the trial judge's remarks may have directed the jury to reach its verdict of guilty. Consequently, the trial judge's remarks were not harmless error.

Next, appellant contends that the trial court improperly admitted into evidence a picture frame retrieved from appellant's home. He argues that the foundation for the introduction of the picture frame was hearsay. We agree.

At trial, Detective James Morton testified, over objection, that on June 11, 1987 he went to appellant's home, which appellant shared with his mother, and spoke to appellant's mother. Morton further testified that he asked appellant's mother "if she had any picture frames made by her son Larry Rush," and that, in response, "she went upstairs and came back with a picture frame ..." (T.T., 2/18/88, p. 53). The picture frame, made of cigarette boxes, is relevant in that Nitterauer testified that her assailant described his hobby of making picture frames out of cigarette boxes prior to attacking her. The frame was then admitted into evidence.

■ "Evidence that is relevant is nonetheless inadmissible if it violates the hearsay rule or any exclusionary rule of evidence." *Commonwealth v. Lippert,* 454 Pa. 381, 383–84, 311 A.2d 586, 587 (1973). The basis for rejecting hear-

say evidence is its assumed unreliability because the declarant is not before the trier of fact and cannot be challenged as to the accuracy of the statement. *Commonwealth v. Smith,* 523 Pa. 577, 593, 568 A.2d 600, 608 (1989). Hearsay testimony also violates the right of the defendant to confront his accuser. *Id.*

■ In the herein case, appellant's mother was never called to testify. Thus, her out-of-court, implied statement that appellant had made the picture frame was not subject to cross examination, and appellant did not have an opportunity to confront the witness. The implied statement was hearsay and did not fall into any hearsay exceptions. *See Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

■ The Superior Court appropriately concluded that this testimony should have been excluded as hearsay but, nonetheless, held that its introduction into evidence was also harmless error. The Superior Court found that the error was harmless because:

> ... the only purpose of this evidence was to corroborate Ms. Nitterauer's identification, and the record is replete with evidence pointing to appellants' identity as her attacker, including both Ms. Nitterauer's identification of appellant and Mr. Roman's, and the matching fingerprint on the book....

(Mem.Op. at pp. 8–9). While it may be true that the record is replete with evidence identifying appellant as the attacker, we cannot say, beyond a reasonable doubt, that the hearsay evidence did not contribute to the verdict. Appellant challenged the reliability of both Nitterauer and Roman's identifications. He also argued that his fingerprint, which was found on the heart ailment book from the bookstore, was obtained during his interrogation by police and not during the attack itself. The only corroborating evidence of identification that appellant was unable to refute was his mother's implied statement that appellant made the picture frame in question. Given that making

picture frames out of cigarette boxes is a rather unusual hobby, the hearsay statement may very well have led the jury to believe that appellant was guilty. We, therefore, conclude that the hearsay statement may well have contributed to the verdict, and thus, was not harmless beyond a reasonable doubt.

Accordingly, the judgments of sentence are vacated and the matter is remanded for a new trial.

NIX, C.J., concurs in the result.

McDERMOTT, J., did not participate in the consideration or decision of this case.