656 A.2d 499

**COMMONWEALTH of Pennsylvania**

v.

**Fred W. PATOSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1994.

Filed March 16, 1995.

536

H. David Rothman, Pittsburgh, for appellant.

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the August 5, 1993 judgment of sentence for indecent assault.[1] Appellant, Fred W. Patosky, presents the following issues for our review:

I. Should the decision of this Honorable Court in *Commonwealth v. Kyle* be reversed to allow an *in camera* review of the alleged victim's psychiatric records?

A. Does the absolute privileged communication between patient and psychiatrist violate appellant's constitutional rights to effective confrontation, compulsory process, due process and effective assistance of counsel?

B. Did the Court err in denying an evidentiary hearing to determine the necessity of an absolute privilege?

C. Does the absolute privilege violate the doctrine of the separation of powers?

D. Does the absolute privilege constitute an abuse of police power?

II. Did the Court err and deny appellant a fair trial by allowing him to be impeached on a collateral issue?

III. Did the Court err and deny appellant a fair trial because appellant was allowed to be impeached by proof of specific conduct to refute his evidence of good reputation for peacefulness?

IV. Did the Court err and deprive appellant a fair trial because evidence was allowed relative to the alleged victim's demeanor at the time she registered her complaint almost two months after the alleged offense and because the court failed to instruct on this issue as requested?

V. Did the Court below err in failing to instruct the jury, as requested, to view the testimony of the alleged victim with extreme caution because of her failure to make a prompt complaint of charges of indecent assault?

Appellant's Brief at 3.

The trial court recited the facts of this case as follows:

1. 18 Pa.C.S. § 3126.

Eleanor Paine testified that during the early morning hours of November 19, 1990, she and [appellant] both of whom were employees of United Airlines, were in the break room at the United Airlines air freight dock at Greater Pittsburgh International Airport. Ms. Paine commented that her fingers were stiff and [appellant] started to rub her hand. He then grabbed her hand with both of his hands and began to pull Ms. Paine toward a cot which was in the room. Ms. Paine told the [appellant] to leave her alone. Instead, [appellant] put his arm around her and responded that he was "collecting the pay she owed him." He then pulled the victim down onto the cot and got on top of her. He put his hands under her knees, pulled her legs up, and pinned her to the cot. [Appellant] then unbuckled her belt and unzipped her pants. Ms. Paine yelled, "Stop it," several times but [appellant] continued and said repeatedly that he was just trying to make her feel good. When Ms. Paine began to complain that [appellant] was hurting her back, he got off of her and allowed her to stand up, but he then began to rub her breasts and he kissed the crotch area of her pants. Ms. Paine did not report the incident until two months later.

Trial Court Opinion at 3.

On January 17, 1991, a complaint was filed against appellant charging him with indecent assault, simple assault[2] and the summary offense of harassment.[3] Following a jury trial, appellant was convicted of indecent assault and acquitted of simple assault.[4] Post-verdict motions were filed and denied. Appellant was subsequently sentenced to three (3) to six (6) months imprisonment, with a recommendation of alternative housing in a treatment facility. This timely appeal followed.

■ Appellant first argues that his constitutional rights to effective confrontation, compulsory process, due process and effective assistance of counsel were all violated when the trial

2. 18 Pa.C.S. § 2701.

3. 18 Pa.C.S. § 2709.

4. In addition, the trial court found appellant guilty of the summary offense of harassment.

court did not allow his attorney to conduct an *in camera* review of the victim's psychiatric records. We disagree.

In 1989, the legislature amended 42 Pa.C.S. § 5944 to read as follows:

No psychiatrist or person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944. In *Commonwealth v. Smith,* 414 Pa.Super. 208, 213, 606 A.2d 939, 942 (1992), *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1993), our Court held that the denial of access to statutorily protected psychiatric records under 42 Pa.C.S. § 5944 did not violate a defendant's right to confrontation and compulsory process. This case was just one of a long line of recent Pennsylvania decisions which have denied a defendant access to confidential therapeutic records. *See also Commonwealth v. Wilson,* 529 Pa. 268, 281, 602 A.2d 1290, 1298 (1992) (absolute privilege denying access to victim's records with her sexual assault counselor did not violate defendant's constitutional rights to compulsory process and confrontation), *cert. denied,* 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992); *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 115–16, 604 A.2d 1036, 1047 (1992) (*en banc*) (defendant's constitutional rights to compulsory process and confrontation were not violated by denial of access to child victim's statutorily protected psychotherapeutic records under 42 Pa.C.S. § 5944), *alloc. denied,* 531 Pa. 638, 611 A.2d 711 (1992); *Commonwealth v. Eck,* 413 Pa.Super. 538, 544, 605 A.2d 1248, 1251–52 (1992) ("Information which is protected by an absolute statutory privilege is not subject to disclosure and denial of access to a criminal defendant is required"). Therefore, in light of this precedential authority, appellant's constitutional rights have

not been violated by this denial of access.[5] Accordingly, his argument fails.[6]

■ Appellant also claims that by enacting this statute, the legislature abused its police power. We disagree.

An act of assembly will not be deemed unconstitutional unless it clearly, palpably, and plainly violates the constitution. *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981). The burden rests on those alleging the unconstitutionality of the enactment. *Commonwealth v. Sutley*, 474 Pa. 256, 260–61, 378 A.2d 780, 782 (1977).

■ The doctrine of police power grants the legislature the power to regulate the public health, safety, welfare and morals. *Commonwealth v. Bonadio*, 490 Pa. 91, 95, 415 A.2d 47, 49 (1980). The legislature through its police power may legislate except where such legislation has been prohibited. *Lloyd v. Fishinger*, 380 Pa.Super. 507, 512, 552 A.2d 303, 305 (1989), *aff'd*, 529 Pa. 513, 605 A.2d 1193 (1992).

The courts of this Commonwealth have already recognized that there have been valid exercises of the police power in protecting the public from inadvertent displays of sexual behavior, in preventing people from being forced against their will to submit to sexual contact, and in protecting minors from being sexually used by adults. *Bonadio*, 490 Pa. at 95, 415 A.2d at 49. *See also Commonwealth v. Shoemaker*, 359 Pa.Super. 111, 117, 518 A.2d 591, 594 (1986) (state has compelling interest to protect the fundamental right of all individuals to control the integrity of his or her own bodies). The purpose of 42 Pa.C.S. § 5944 is to protect the general public's right to private communications with their psychiatrists and psychologists. Moreover, appellant has failed to demonstrate

---

5. As appellant's underlying claim has no merit, his ineffective assistance of counsel claim fails as well. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987) (in order to show ineffectiveness, defendant must demonstrate underlying claim was of arguable merit, that counsel's performance was unreasonable and that counsel's ineffectiveness prejudiced defendant).

6. Consequently, we need not address appellant's second argument, that the trial court erred in denying an evidentiary hearing to determine the necessity of an absolute privilege.

that the legislature was not allowed to enact statutes in this area. Consequently, we find that the enactment of this statute was a logical extension of and clearly fell within the legislature's police power.[7] *See Bonadio, supra,* 490 Pa. at 91, 415 A.2d 47.

■ Appellant further argues that the enactment of this statute violates the doctrine of separation of powers. Again, we disagree.

The doctrine of the separation of powers was not intended to absolutely seal off the three branches of government from one another, as it obviously intended that there would be a degree of interdependence and reciprocity between the various branches. *Commonwealth v. Sutley,* 474 Pa. 256, 262, 378 A.2d 780, 783 (1977). Moreover, one of the most distinguished jurists, Justice Samuel Roberts, explained the interdependence and independence between the judicial and legislative branches as follows:

> Legislative infringement on the province of the judiciary, and the concomitant threat to individual liberties, may take one of two forms. First, the Legislature may take action which impairs the independence of the judiciary, either by requiring the performance of non-judicial functions, or by interfering with the power of the judiciary to perform its essential functions.... Second, the Legislature may usurp the power of the judiciary by taking it upon itself to judge individual cases.... Enactment of ... a rule of general application [which does not take on one of these two forms] is a proper legislative function.

*Sutley,* 474 Pa. at 278–79, 378 A.2d at 791–92 (ROBERTS, J., dissenting) (citations omitted).

As the enactment of 42 Pa.C.S. § 5944 does not impair the independence of the judiciary or usurp the power of the judiciary by taking over the individual cases, this statute is

7. When discussing the passage of this legislation, Representative Weston, the house member who presented the recent amendment to 42 Pa.C.S. § 5944, stated that the amendment was necessary for individuals to feel comfortable discussing the often embarrassing details of sexual assault cases with their psychiatrists. *See* 1989 Legislative Journal–House at p. 2087.

constitutionally valid. Consequently, this argument is without merit.

■ Appellant next argues that the trial court erred by allowing appellant to be impeached on a collateral issue. Specifically, he asserts that the trial court erroneously admitted at trial the testimony of two witnesses regarding appellant's prior "off-color" [8] statements to them.

■ Preliminarily, we note that questions concerning the admissibility of evidence are within the sound discretion of the trial court, and will not be reversed on appeal absent a clear abuse of discretion. *Engle v. West Penn Power Co.*, 409 Pa.Super. 462, 481, 598 A.2d 290, 299 (1991), *appeal denied*, 529 Pa. 669, 605 A.2d 334 (1992). If a defendant delves into what would have been objectionable testimony on the Commonwealth's part, then the Commonwealth can probe into this objectionable area. *Commonwealth v. Stakley*, 243 Pa.Super. 426, 430, 365 A.2d 1298, 1300 (1976). *Cf. Commonwealth v. Johnson*, 419 Pa.Super. 625, 644, 615 A.2d 1322, 1331 (1992) (although evidence of defendant's reputation is not admissible in Commonwealth's case-in-chief, it can be introduced in rebuttal once defendant places reputation at issue and "opens door" to rebuttal), *appeal denied*, 533 Pa. 657, 625 A.2d 1191 (1993). Moreover, we have stated that:

> The common law has long recognized the right of a party to impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his testimony at trial, so long as the inconsistency is not collateral to the issues in the case.... It is the substance of the statement, i.e., that it conflicts with the testimony of the witness at trial, that determines its admissibility ... [where] the witness does not admit making the inconsistent statement, it may be proved by extrinsic evidence, such as the testimony of the person to whom the statement was made.

*Commonwealth v. Brown*, 302 Pa.Super. 391, 403, 448 A.2d 1097, 1103 (1982).

**8.** These statements refer to sexually suggestive comments.

In the instant case, appellant testified on direct examination that it was not his practice to tell "off-color" jokes in the presence of the victim. N.T. 2/19/93 at 337. When the prosecutor asked him on cross-examination what he had meant by this statement, appellant stated "I do not, never had, never have or rarely ever have spoke anything like that to women." N.T. 2/19/93 at 382. These comments "opened the door" to the Commonwealth's introduction of the testimony of the two women, who contradicted appellant's statement by testifying that appellant had previously made inappropriate "off-color" statements to them. As appellant was charged with "harassment," these "off-color" statements were not collateral to the issues in the case, and thus, they were allowed to be proven by extrinsic evidence.[9] *Brown*, 302 Pa.Super. at 403, 448 A.2d at 1103. Therefore, the trial court did not abuse its discretion in admitting this testimony.

■ Appellant next contends that he was denied a fair trial because the introduction of his good reputation for peacefulness was erroneously impeached through proof of specific conduct. We disagree.

Commentators of Pennsylvania law have stated that:

It is a well-settled rule that evidence of the accused's bad character is not admissible in a criminal case unless one of three exceptions applies. First, the accused may elect to introduce evidence of his or her good character.... [One of the consequences] of introducing evidence of good character is that the prosecution may call rebuttal witnesses to testify that the accused's character is poor. Like the accused's evidence of good character, the prosecution's rebuttal testimony is subject to restrictions. The witness may

---

**9.** Harassment is defined in 18 Pa.C.S. § 2709(a)(3) as follows:

§ 2709 **Harassment**

A person commits a summary offense when, with intent to harass, annoy or alarm another person:

.    .    .    .    .

(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

testify only to the accused's reputation in the community, ... the rebuttal evidence must be restricted to the character traits raised by the accused....

Packel & Poulin, *Pennsylvania Evidence* (1987), § 404.2 Character Evidence at 141, 149–50.

In the instant case, appellant called several witnesses who testified to his reputation for a peaceful character in the community. Subsequently, the Commonwealth asked their rebuttal witness, Cathy Cavallo, about appellant's reputation for peacefulness. The following conversation transpired:

Q: Are you familiar with [appellant's] reputation among the work place as far as peacefulness goes?

A: Yes.

Q: And what, what would that reputation be?

A: Very negative, very poor.

N.T. 2/19/93 at 407. Subsequently, when appellant's trial counsel attempted to impeach Cavallo's credibility, Cavallo testified that this reputation testimony evolved from conversations with other individuals at United Airlines. *See* N.T. 2/19/93 at 409, 415. These individuals discussed several "off-color" remarks appellant had made to other people. *See* N.T. 2/19/93 at 409, 415. Cavallo's discussion of these specific conversations was admissible because the purpose of defense counsel's examination was to test the credibility of the witness in reaching her opinion about appellant's reputation for peacefulness, not to prove that appellant was guilty of the instant case. *See Commonwealth v. Adams*, 426 Pa.Super. 332, 336, 626 A.2d 1231, 1233 (1993) (cross-examination of character witness is allowed where actual purpose of examination is to test whether witness is familiar with reputation concerning which he has testified), *appeal denied*, 535 Pa. 672, 636 A.2d 631 (1993). Accordingly, the trial court did not abuse its discretion in admitting this testimony. *Engle*, 409 Pa.Super. at 481, 598 A.2d at 299.

■ Appellant next contends that testimony regarding the victim's demeanor when she registered her late complaint

should not have been admitted into evidence. Specifically, he claims that such testimony was irrelevant. We disagree.

■■■■■ We have stated that all relevant evidence should be admitted unless a specific rule bars its admission. *Id.* at 481, 598 A.2d at 299. Evidence is relevant if it tends to establish facts at issue, making the fact at issue more or less probable or intelligible. *Id.* at 481, 598 A.2d at 300.

In the instant case, a major portion of appellant's defense strategy was to attack the victim's credibility based on her failure to file a prompt complaint against appellant.[10] To rebut this argument, the Commonwealth called her supervisor Helen Smalich, who testified that when the victim reported the incident to her, she was "extremely distraught and [s]he appeared to be extremely nervous." N.T. 2/19/93 at 228. The victim worked with appellant, and saw him daily. *See* N.T. 2/18/93 at 57. Furthermore, appellant continued to make "off-color" statements to her even after the incident. N.T. 2/18/93 at 74–75. In addition, the victim was the only female working in the air freight division with appellant and was fearful of causing trouble by reporting this incident. *See* N.T. 2/19/93 at 229. Consequently, as the testimony of the victim's demeanor merely offers an explanation for the victim's failure to file a prompt complaint, the trial court did not abuse its discretion in admitting this testimony. *Engle,* 409 Pa.Super. at 481, 598 A.2d at 299.

Appellant finally contends that the trial court made two errors when charging the jury.

■■■■■ A trial court's charge to the jury must contain a correct statement of the law. *See Commonwealth v. Copeland,* 381 Pa.Super. 382, 391, 554 A.2d 54, 58 (1988) (defendant denied new trial because correct statement of law in jury charge), *appeal denied,* 523 Pa. 640, 565 A.2d 1165 (1989). A court is free to use its own form of expression in charging the jury as long as it adequately, accurately and clearly explains the principle of law. *Commonwealth v. Whitner,* 278 Pa.Su-

10. The victim reported the incident almost two months after it occurred. *See* N.T. 2/19/93 at 179.

per. 175, 182, 420 A.2d 486, 490 (1980). In order for a party to be entitled to a new trial, the jury instruction must be fundamentally in error, or have misled or confused the jury. *Noyes v. Cooper*, 396 Pa.Super. 592, 601, 579 A.2d 407, 411 (1990), *appeal denied*, 527 Pa. 667, 593 A.2d 842 (1991).

■■■ Appellant first asserts that the trial court erred in rejecting his point of charge on the issue of a prompt complaint. We disagree.

Our Supreme Court has stated that "where the actual occurrence of [an] assault is at issue in the case, the trial judge is required to charge the jury as to the relevance of a delay in disclosure and the significance of a prompt complaint." *Commonwealth v. Snoke*, 525 Pa. 295, 302, 580 A.2d 295, 298 (1990).

In the instant case, the trial court charged the jury on the issue of prompt complaint as follows:

The evidence of Eleanor Paine's delay in making a complaint does not necessarily make her testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry which the victim of a crime such as this would ordinarily be expected to make.

Therefore, the delay in making a complaint should be considered in evaluating her testimony and in deciding whether the act occurred at all.

You must not consider Eleanor Paine's delay in making a complaint as conclusive evidence that the act did not occur for the failure to make a complaint properly and the nature of her explanation for failing to complain promptly are factors which simply bear upon her credibility and on the believability of her testimony, and all of the necessary factors must be considered—must be considered together with all of the evidence that you have to consider in this case.

N.T. 2/22/93 at 532. As the jury charge conveyed the correct statement of the law, the trial court satisfied its obligation. Accordingly, appellant's argument fails.

■■■ Appellant also contends that the trial court erred in rejecting his points for charge regarding the victim's "res

gestae" when she reported the incident to Smalich. Specifically, appellant contends that as the victim's demeanor at that time was irrelevant and did not fall into any hearsay exception, the trial court erred when they rejected his points of charge, instructing the jury to disregard this testimony, or in the alternative, to view it with caution.

Evidence that is relevant is nonetheless inadmissible when it violates the hearsay rule. *Commonwealth v. Rush,* 529 Pa. 498, 504, 605 A.2d 792, 795 (1992). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Michaux,* 360 Pa.Super. 452, 461, 520 A.2d 1177, 1181 (1987), *appeal denied,* 517 Pa. 605, 536 A.2d 1329 (1987). A statement is satisfied by nonverbal conduct of a person intended as a communication. Packel & Poulin, *Pennsylvania Evidence* (1987), § 801 Hearsay at 541.

Here, the victim's nervous demeanor when reporting the incident to Smalich was not a statement as it was not intended as a communication. Hence, it cannot be considered hearsay. Therefore, as this was not hearsay testimony and as stated previously, entirely relevant, the trial court did not err in refusing to charge the jury on the two points of charge submitted by appellant. Consequently, appellant's argument has no merit, and judgment of sentence is affirmed.

Affirmed.

CIRILLO, J., files a dissenting statement.

CIRILLO, Judge, dissenting.

I respectfully dissent. I believe that the fundamental right to freedom is greater than the right to have the accuser's background remain inviolate. My position on this issue has been previously expounded upon, as seen in *Commonwealth v. Kennedy:*

> I cannot agree ... that an accused's state constitutional rights must bow to the state's interest in the treatment of victims and the safety and well being of those who report abuse. I am cognizant of the delicate and difficult balancing of significant interests—a defendant's fundamental right to

a fair trial on the one hand, and a victim's right to privacy following a terrible assault on his or her integrity on the other. . . . The defendant's constitutional rights, however, must prevail. The state, by way of its legislature or judiciary, cannot deprive a person of his or her right to constitutional due process. . . . I would find that the state's compelling interest in the confidentiality of the counseling relationship must yield to the greater interest in promoting and protecting the defendant's constitutional rights. *See Commonwealth v. Carillion,* 380 Pa.Super. 458, 474, 552 A.2d 279, 287 (1988) (Cirillo, P.J., concurring).

*Commonwealth v. Kennedy,* 413 Pa.Super. 95, 117–19, 604 A.2d 1036, 1048 (1992) (*en banc*), *alloc. denied,* 531 Pa. 638, 611 A.2d 711 (1992) (Cirillo, J., concurring).

Consequently, I believe that, in the present case, Patosky's constitutional rights to effective confrontation, compulsory process, and due process were violated when the trial court did not allow his attorney to conduct an *in camera* review of the alleged victim's psychiatric records. *See Kennedy and Carillion, supra* (Cirillo, J., concurring).