J-S47010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLANIA : IN THE SUPERIOR COURT OF
                                                     : PENNSYLVANIA
                                                     :
              v.                            :
                                                     :
                                                     :
KYVET BETHEA                         :
                                                     :
                 Appellant         : No. 1448 WDA 2017

Appeal from the Judgment of Sentence October 3, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002002-2016

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:          **FILED SEPTEMBER 14, 2018**

Appellant, Kyvet Bethea, appeals from the judgment of sentence entered on October 3, 2017, following his jury trial convictions of two counts each of criminal use of a communication facility and criminal conspiracy to deliver a controlled substance.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  An undercover narcotics agent made numerous purchases of cocaine from a woman named Tonya Riston in an effort to identify her drug supplier.  When police arrested Riston, she told them about prior drug transactions she conducted with Appellant and she agreed to testify against him at trial.  The trial court held a three-day jury trial commencing on April 10, 2017.  The jury

_____

[1] 18 Pa.C.S.A. § 7512(a) and 18 Pa.C.S.A. § 903/35 P.S. § 780-113(a)(30).

_____

*   Retired Senior Judge assigned to the Superior Court.

found Appellant guilty of the aforementioned crimes, but deadlocked on two counts of possession of a controlled substance and two counts of possession with intent to deliver a controlled substance.[2] On October 3, 2017, the trial court sentenced Appellant to 60 months of restrictive intermediate punishment, beginning with one year of incarceration, followed by electronic monitoring for nine months, then probation for five years, consecutive to Appellant's incarceration for one count of conspiracy to deliver a controlled substance. On the other conspiracy to deliver a controlled substance conviction, the trial court sentenced Appellant to a concurrent term of 10 years of probation. On the two counts of criminal use of a communications facility, the trial court sentenced Appellant to a total term of seven years of probation, concurrent to Appellant's other sentences. This timely appeal resulted.[3]

---

[2] The Commonwealth retried Appellant on these four charges at a second jury trial on October 18, 2017. The jury found Appellant not guilty of two of the charges and deadlocked on the other two. On November 20, 2017, the Commonwealth *nolle prossed* the deadlocked charges.

[3] On October 4, 2017, Appellant filed a notice of appeal. On October 6, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on October 27, 2017. On that same day, however, Appellant also filed a motion to amend his concise statement upon receipt of the trial transcripts. On October 31, 2017, the trial court granted relief, allowing Appellant to file an amended concise statement within 20 days of receipt of the transcripts. On December 1, 2017, this Court dismissed Appellant's appeal for failing to file a docketing statement. Upon Appellant's application for reconsideration, however, we vacated the dismissal and reinstated Appellant's appeal. On January 4, 2018, Appellant filed an amended concise statement. The trial court subsequently issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 18, 2018.

On appeal, Appellant presents the following issues for our review:

1. Whether the trial court abused its discretion by denying the defense's request to have numerous jurors excused for cause. Instead[,] the trial court pressured some prospective jurors into rehabilitation.

2. Whether the trial court committed reversible error when juror 29 was dismissed for cause although he answered all questions appropriately and was dismissed because the trial judge "went to the heart."

3. Whether the trial court was in error when it sustained a prosecution objection during cross-examination when Ms. Riston was asked whether she performed controlled buys for the Attorney General.

4. Whether the trial court committed reversible error when the court stated defense counsel "opened the door" to the issue of drugs being found in the home Appellant was arrested in.

5. Whether the trial court committed reversible error when it permitted an agent from the State Police to testify that AFIS is an inmate database of people arrested for crimes.

Appellant's Brief at 5 (superfluous capitalization omitted).[4]

Initially, we agree with the trial court's determination that Appellant waived his first and third issues, as set forth above. The trial court considered Appellant's first issue presented too vague for meaningful review because Appellant failed to identify which of the over 70 potential jurors were allegedly pressured or wrongly rehabilitated. *See* Trial Court Opinion, 1/18/2018, at 3. Moreover, with regard to Appellant's third appellate issue, the trial court

---

[4] Appellant raised additional issues before the trial court, but he has abandoned them on appeal.

noted that Appellant's concise statement, "consisted of an incomplete sentence." *Id.* at 8. The issue, as set forth in Appellant's concise statement read, "The trial judge was in error when he sustained a prosecution objection during cross-examination of Ms. Riston when she was asked." Concise Statement, 1/4/2018, at ¶ 8. The trial court stated, it could not "determine what sustained objection Appellant fe[lt] constituted reversible error." Trial Court Opinion, 1/18/2018, at 8.

Upon review, we agree that Appellant waived both of these issues. This Court has previously determined:

> This Court has considered the question of what constitutes a sufficient 1925(b) statement on many occasions, and it is well-established that an appellant's concise statement must properly specify the error to be addressed on appeal. The Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal. Further, this Court may find waiver where a concise statement is too vague. When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all.

*In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013). Here, because Appellant failed to identify the errors complained of on appeal with specificity, the trial court had to guess as to Appellant's claims, and, therefore, we agree that Appellant waived his first and third appellate issues. Moreover, Appellant's attempt to be more specific on appeal cannot overcome waiver. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). These claims are waived.

Next, we review all of Appellant's remaining claims for an abuse of discretion. *See Commonwealth v. Wholaver*, 177 A.3d 136, 162 (Pa. 2018) (decision whether to disqualify a juror for cause lies within the sound discretion of the trial court); *see also Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013) ("The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error."). In examining Appellant's claim that juror 29 was wrongly dismissed for cause, the trial court first stated that Appellant waived the issue by failing to object. Trial Court Opinion, 1/18/2018, at 6. In the alternative, the trial court found the claim was otherwise without merit because the juror expressed an inability to be fair and impartial regarding police officer testimony after recently watching a television show about police brutality. *Id.* at 6-7. Next, the trial court rejected Appellant's contention that he did not "open the door" to the Commonwealth asking questions regarding a marijuana growing operation located inside Appellant's residence, which is the subject of a separate criminal prosecution. *Id.* at 10-12. The trial court concluded that Appellant "opened the door," on cross-examination of one of the investigating officers, when he asked, "Can you or any member of your team come and tell this jury that they saw this man in possession of drugs or selling drugs?" *Id.* at 10. As a result, the trial court allowed the Commonwealth to ask the officer, on re-direct examination, questions regarding the marijuana growing operation which

police discovered at Appellant's home when arresting him in this matter. *Id.* at 11. Finally, with regard to Appellant's fifth appellate issue, the trial court noted that although a police officer testified that fingerprints are entered into a national criminal identification database, the trial court issued a curative instruction explaining to jurors that the database also contains fingerprints from government agencies and for employment purposes. *Id.* at 12. "The law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Patterson***, 180 A.3d 1217, 1228 (Pa. Super. 2018) (internal citation omitted). Furthermore, the trial court recognized that the parties stipulated that the only fingerprint identified in the national database was Riston's and, therefore, Appellant was not prejudiced. Trial Court Opinion, 1/18/2018, at 13.

Upon our review, we conclude that there was no abuse of discretion in this case and that the trial court's January 18, 2018 opinion meticulously, thoroughly, and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of the trial court's opinion and adopt it as our own. Because we have adopted the trial court's opinion, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/14/2018

COMMONWEALTH OF PENNSYLVANIA    :    IN THE COURT OF COMMON PLEAS

                               :    OF ERIE COUNTY, PENNSYLVANIA

     v.                              :    CRIMINAL DIVISION

                               :

KYVETT BETHEA                    :    NO. 2002-2016

### 1925(a) OPINION

Garhart, J., January ___18___, 2018

Appellant, Kyvett Bethea, appeals from the judgment of sentence entered on October 3, 2017, following his conviction of two counts of criminal conspiracy to deliver a controlled substance (cocaine)[1] (Counts 5 and 6), and two counts of criminal use of a communication facility[2] (Counts 7 and 8). Based on the following, this Court respectfully requests that Appellant's judgment of sentence be affirmed.

### I. BACKGROUND OF THE CASE

Following a three day jury trial, April 10, 2017 to April 12, 2017, Appellant was found guilty of the foregoing drug related offenses, which constituted Counts 5, 6, 7, and 8. The jury was deadlocked on two counts of PWID (Counts 1 and 2), and two counts of possession (Counts 3 and 4).

On October 3, 2017, the Court sentenced Appellant as follows: at Count 5 (conspiracy/PWID), Appellant was sentenced to 60 months of restrictive intermediate punishment, beginning with 1 year of incarceration, followed by electronic monitoring for 9 months, then probation for 5 years, consecutive to Appellant's incarceration; at Count 6 (conspiracy/PWID), Appellant was sentenced to 10 years of probation, concurrent with Count 5;

---

[1] 18 Pa.C.S.A. § 903 and 35 Pa. C.S.A. §780-113(a)(30).
[2] 18 Pa. C.S.A. §7512(a).

1

and at Counts 7 and 8 (criminal use of a communications facility), Appellant was sentenced to 7 years of probation, concurrent with Count 5.

On October 18, 2017, the Commonwealth re-tried the deadlocked counts against defendant at second jury trial. Defendant was found not guilty of Counts 1 and 3 and the jury was again deadlocked, this time as to counts 2 and 4. On November 20th, 2017, the trial court granted the Commonwealth's motion to *nolle prosse* Counts 2 and 4 of the Criminal Information.

This appeal followed, in which Bethea, through his legal counsel, presents the following ten issues for consideration on appeal:

4. The Trial Court abused its discretion by denying the defendant's request to have numerous juror's excused for cause. Instead the trial court appeared to pressure some prospective jurors into rehabilitation.
5. Appellant Kyvet Bethea was denied due process when the Court disallowed reputation evidence of the Commonwealth's key witness, Tonya Riston, pursuant to Pa.R.E. 608(a) and specific instances of conduct of the said Ms. Riston pursuant to Pa. R.E. 608(b).
6. Jurors who were dismissed for cause in another courtroom were then brought back to serve on (sic) jurors in the instant trial.
7. Juror 29 was dismissed for cause after he answered all questions appropriately and was dismissed because the trial judge "went to the heart".
8. The trial judge was in error when he sustained the prosecution objection during cross-examination of Ms. Riston when she was asked. (sic)
9. The trial judge committed reversible error when asked if Ms. Riston made a lot of money and he sustained the objection.
10. The court committed reversible (sic) when it sustained the prosecutor's objection during cross examination as to whether Ms. Riston believes a probation officer can make a probationer's life miserable.
11. The trial Judge committed reversible error when he said I opened the door because they found drugs in the house Mr. Bethea was arrested in. But in fact, Mr. Bethea was not in possession of any narcotic as the jury found.
12. The judge when he permitted an agent from the state police to testify that a AFIS is an inmate s (sic) database.
13. When the state trooper was asked if Mr. Bethea;s (sic) prints was (sic) found and she said she had no personal knowledge of the prints.

(Appellant's Concise Statement of Matters Complained of on Appeal, January 4, 2018, pp. 2-3).

For ease of disposition, we have collected Appellant's claims into several categories: (A) jury

2

selection issues, (B) issues concerning the direct and cross examination of Commonwealth witness, Tonya Riston, and (C) evidentiary rulings.

## II. DISCUSSION

### A. Jury Selection.

Appellant's allegations of error at Paragraphs 4, 6, and 7 of his Concise Statement concern matters of jury voir dire. Appellant's first claim is general in nature and alleges the trial Court denied the defense's request to have "numerous" jurors excused for cause, and instead "pressur[ed] some prospective jurors into rehabilitation." (Appellant's Concise Statement, ¶4). Appellant fails to identify which jurors were allegedly pressured. We find this statement so general as to prohibit meaningful review of this claim, which we consider waived. See *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007)("This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful review, we may dismiss the appeal entirely or find certain issues to be waived.")

Over 70 jurors were vetted during the voir dire process. A review of the transcript shows that this court dismissed numerous jurors for cause upon the motion of Appellant's attorney. However, we cannot guess which jurors Appellant alleges were wrongly rehabilitated. Appellant's first allegation of error fails as impermissibly vague. In *In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013), the Pennsylvania Superior Court held:

> [I]t is well-established that "Appellant's concise statement must properly specify the error to be addressed on appeal." *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (citation omitted). "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." *Id.* (brackets, internal quotation marks, and citation omitted). Further, **this Court may find waiver where a concise statement is too vague.** *Id.* "When a court has to guess what issues an

3

appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa.Super. 2001) (citation omitted). "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Id.* at 686–87.

63 A.3rd at 350. Since we don't know which jurors were impermissibly pressured into rehabilitation, we cannot rule on this issue. Consequently it is waived.

Appellant's next juror-based claim of error, in Paragarph 6 of his Concise Statement, is that the County recycled jurors in the jury pool who had previously been dismissed for cause in other court rooms. This claim of error is meritless. This standard Erie County practice did not violate Appellant's rights in any way, as he had an opportunity to specifically vet each juror just as the Commonwealth did. Furthermore, just because a juror may have had disqualifying issues in one trial, clearly does not translate into necessary disqualifying issues in another case. For instance, if a juror knows a lawyer or a witness in one trial, he may not know the lawyers or witnesses in another trial. Similarly, if a witness had a bad personal experience involving a burglary, she may have no issues with a DUI case. Appellant was not prejudiced by the make-up of the jury pool. This issue lacks merit.

Appellant's third jury—error claim is that juror 29 was wrongly dismissed for cause. Juror number 29 indicated that he would be less likely to believe the testimony of a police officer or other law enforcement officer because of his or her job. N.T. (Day 1) p. 117. The morning of jury selection, this potential juror viewed a television news program announcing an upcoming Erie County police brutality, including an inflammatory video clip of the egregious police violence. This juror was asked:

MR. BAUER: …[W]ould you be less likely to believe the testimony of a police officer or other law enforcement officer because of his or her job?

4

JUROR 29: I did –

MR. BAUER: Do you have that strong belief?

JUROR 29: The reason why I did that was this morning news they said that jury selection was going on for the police brutality case and I had seen the video and I thought, well, a group of guys that work together, police officers, they got each other's back, you look one way, I"ll look the other, and that's my opinion.

THE COURT: Got you.

JUROR 29: It was based on the video that I had seen.

\* \* \*

MR. BAUER: …[M]y question to you is would you be able to be fair to them despite the fact you believe some police officer's lie?

JUROR 29: I'm on the fence, depends on the situation, and the …

THE COURT: Do they start off under a cloud?

\* \* \*

THE COURT: Police offer[s], do you think they're likely to be part of a fraternity that watches each other's backs and aren't truthful?

JUROR 29: To an extent. It depends if this is the first infraction. In my opinion, depends if this is the first infraction with this particular officer or if it's a group of police officers.

\* \* \*

THE COURT: Attorney Bauer was worried you can't give him a fair shake because you sort of have a jaundiced feeling about police.

JUROR 29: That's possible because – like I said, I was misled – I was thinking that this is going to the jury selection for that particular case [police brutality].

THE COURT: Didn't work out. That would have gotten you off the case for sure.

JUROR 29: Right.

MR. BAUER: Well, I guess I just need to know, would you give the – would you basically assume that any police officer, law officer is going to lie when he takes the stand?

JUROR 29: No. it depends on the case, individually at hand.

MR. BAUER: Let me ask you a question. Would you listen to what the policeman testified to or the agent would testify to?

5

JUROR 29: Yes, I guess.

MR. BAUER: Would you be able to judge their credibility the same as you would any other witness?

JUROR 29: Yes.

MR. BAUER: Would you treat them differently because they were police officers?

JUROR 29: No.

MR. BAUER: I don't have any other questions.

MR. RODRIGUEZ: No questions, Judge.

\* \* \*

MR. BAUER: Judge, I would probably motion to strike him for cause.

THE COURT: I'm granting it. As I said, sometimes, I go to the heart, and I'm hearing him say the right things – I heard him say the right things for you, too, but sometimes I don't. He's excused.

MR. RODGRIGUES: Number 30.

N.T. (Day 1) pp. 117- 120.

First, we note that Appellant's attorney, Mr. Rodriguez, failed to object to this juror's dismissal for cause, thereby waiving the present argument. Second, it is apparent that, despite the juror's later conjecture that he could be fair, this juror was deeply shaken by his observation of the televised newscast of police brutality. The trial Court determined that despite the juror's desire to appear fair minded, his observation of the acts of police brutality that same morning rendered him emotionally incapable of a fair disposition of the case, which would have necessitated the even-handed weighing of police and narcotic agent testimony.

The scope of voir dire is at the discretion of the trial court. *Commonwealth v. Ellison*, 902 A.2d 419, 424 (Pa.2006). "The opportunity to observe the demeanor of the prospective juror and

6

the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community. Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight ." *Commonwealth v. Bachert*, 453 A.2d 931, 937 (Pa.1982). The Pennsylvania Superior Court has eschewed reversing decisions of the trial judge concerning voir dire in the absence of palpable error. *Ellison*, 902 A.2d at 424. The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence. *Cordes v. Associates of Internal Med.*, 87 A.3d 829, 864 (Pa.Super.) (en banc), *appeal denied*, 102 A.3d 986 (Pa.2014). This Court's dismissal of Juror 29 was based on its first hand observation of the prospective juror's demeanor and credibility leading to a determination that this juror would not have been able to be fair and impartial in viewing the testimony of a police officer. There was no palpable error.

**B. Tonya Riston.**

Appellant claims, in Paragraphs 5,8,9, and 10 of his Concise Statement, that this Court erred in its handling of the testimony of Commonwealth Witness, Tonya Riston. Riston testified that she had bought cocaine from the Appellant twice and sold it to another user, who ultimately turned out to be undercover narcotics agent Randall Schirra. Schirra also testified at trial, corroborating Riston's testimony. Appellant's first claim is that the Court "disallowed reputation evidence...and specific instances of conduct," pertaining to Riston. We note that Appellant's counsel thoroughly cross examined Riston and revealed her to be the junkie-turned informant that she is. He asked her whether she was a prostitute (no), a stripper (yes), a dealer (not professional) and an addict (yes). N.T. (Day 2) pp. 136, 136, 132, 129. He also elicited the fact

7

that the witness suffered from anxiety, PTSD, depression and mental health issues. N.T. (Day 2) p. 146.

Appellant fails to allege in Paragraph 5 of his Concise Statement what other specific acts of degradation he had hoped to elicit from this witness. We do note that the Court sustained the Commonwealth's objection when Appellant's counsel asked Riston if she was a "criminal." N.T. (Day 2) p. 148. This question went beyond mere conduct. Riston's prior criminal record and the fact she was being shown leniency in exchange for her testimony had already been elicited. The term "criminal" was inflammatory, argumentative, and unduly prejudicial and the objection was properly sustained. In any event, Appellant did not suffer any harm, since the facts of Riston's prior criminal record were made known to the jury.

Appellant's next claim of error, in Paragraph 8 of his Concise Statement, concerns Riston's testimony, but consists of an incomplete sentence. We cannot, on the face of Appellant's Statement, determine what sustained objection Appellant feels constituted reversible error.

Appellant's third claim of error with regard to Riston's testimony is that this Court sustained an object when Appellant's counsel asked her "if Ms. Riston made a lot of money." (Concise Statement, ¶ 9). We cannot find such testimony in the transcript. However, we do find that Appellant's counsel asked Ms. Riston, "So you did a lot of things for money." N.T. (Day 2) at 136. This question followed Riston's allowable testimony that she used to do Appellant's homework "for money." The objection to the question of whether Riston "did a lot of things for money," was sustained as argumentative. Once again, Appellant's counsel was attempting to attach derogatory labels to the witness, in addition to eliciting the facts of her lifestyle. Even if this evidentiary ruling was incorrect, any error here was harmless since Appellant's counsel was

8

able to demonstrate for the jury that the witness accepted payment for doing Appellant's homework.[3]

Finally, Appellant claims this Court erred when it did not allow Appellant's counsel to ask Riston whether "a probation officer can make a probationer's life miserable." (Concise Statement, ¶ 10). Contrary to Appellant's assertion, this Court **did allow** this question. The trial transcript reflects the following:

Q. [MR. RODRIGUEZ]: Let me ask you this. You're on probation for six years, right?

A. [MS. RISTON]: Yes.

Q. You think a PO can make your life miserable?

MR. BAUER: Objection.

THE COURT: She can answer, if she can.

A. What?

Q. Do you think a probation officer can make your life miserable?

A. My probation officer is very nice.

MR. RODRIGUEZ: Judge.

THE COURT: You asked her a question.

MR. RODGRIGUES: No. I asked her – that's not the question.

THE COURT: Stop. First of all, you're bordering on the argumentative. I let her answer if she could. She answer, you'll live with it. Move on. Move on.

N.T. (Day 2) at 140. It appears as though Appellant's counsel is not complaining that he was prevented from asking the desired question, but rather he is complaining that he did not get the desired response. Unfortunately, requisitioning perfect answers is beyond this Court's jurisdiction.

---

[3] We note that Riston testified that she was attempting to complete her last year as a math major at Penn State Behrend when she fell back into drug use. N.T. (Day 2) at 135.

9

## C. Evidentiary Rulings.

### i. Appellant counsel opened the door.

Appellant argues in that the trial judge committed reversible error when he allowed law enforcement to testify, in response to Appellant counsel's cross examination question, that when the police arrested Appellant, he was in possession of a large marijuana growing operation, as well as marijuana for sale. (Concise Statement, ¶11). N.T. (Day 3) p.52. Appellant alleges this was error since was not charged with possession of marijuana in this case. [4] Yet it was counsel for Appellant, himself, who asked the damning question on cross examination. Counsel for the Appellant opened the door to this line of testimony when, on cross examination, he asked Agent Randall Schirra, the following:

> Q. [MR. RODRIGUEZ]: **Can you or any member of your team come and tell this jury that they saw this man in possession of drugs or selling drugs?**
>
> A. [AGENT SCHIRRA]: Yes.

N.T. (Day 3) at p. 34-35.

> THE COURT: Now let's come to sidebar.
>
> (Whereupon, a sidebar was held).

> THE COURT: You just opened a door that's going to hit you in the face because they went there, arrested him, found drugs in the house and that door has been opened.
>
> MR. RODRIGUEZ: Well, first of all, the guys who were doing surveillance, that's what we're talking about.
>
> THE COURT: You opened a door.
>
> MR. BAUER: You asked a broad question and opened that door wide open.
>
> MR. RODIGUEZ: I'm going to rephrase my question.

---

[4] Appellant was charged with this offense at Erie County Criminal docket number 1970-2016.

10

MR. BAUER: Too late now.

THE COURT: You need to know what you have done. I wouldn't open any more doors. Go ahead.

N.T. (Day 3) at 34-35. Subsequently, once the door had been opened by counsel for Appellant, the prosecutor asked Agent Schirra on re-direct whether, in the process of arresting Appellant, they found contraband or drugs. Schirra answered that Appellant was found with a marijuana growing operation and marijuana for sale. Counsel for Appellant's question clearly required an answer or the jury would have been led to wrongly believe that Appellant was never found with any drugs. Silence in the face of this suspended question would have led to an inference in the negative that would have been untrue, misleading, and unduly prejudicial to the prosecution.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). However, the Pennsylvania Superior Court has stated:

> One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase 'opening the door'...by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

Commonwealth v. Lewis, 885 A.2d 51(Pa. Super. 2005); citing Commonwealth v. Stakley, 243 Pa.Super. 426, 365 A.2d 1298, 1299–1300 (1976). See also Commonwealth v. Patosky, 440 Pa.Super. 535, 656 A.2d 499, 504 (1995), appeal denied, 542 Pa. 664, 668 A.2d 1128 (1995) (holding when defendant delves into what would have been objectionable testimony on Commonwealth's part, Commonwealth can probe into objectionable area); Commonwealth v. Bey, 294 Pa.Super. 229, 439 A.2d 1175, 1178 (1982) (holding where defendant opens door to

11

what otherwise might be objectionable testimony, Commonwealth may probe further to determine veracity of statement).

The proper course was to allow an answer to the question posed by Defense counsel. Accordingly, this issue does not merit relief.

ii. AFIS testimony. (Concise Statement, ¶12).

Appellant's next contention of error is that the Court "permitted an agent from the state police to testify that an AFIS is an inmate s database." (Concise Statement, ¶ 12). We are first compelled to correct Appellant's characterization of the testimony of Trooper Victoria Weibel, a member of the Pennsylvania State Police forensic unit. While explaining her process of obtaining fingerprints from certain evidence obtained in this case, Trooper Weibel referred to sending the prints out to the AFIS database. The prosecutor asked her to explain what the AFIS database was. She testified as follows:

> TROOPER WEIBEL: AFIS stands for automated fingerprint identification system. It is a nationwide data base, essential, of people who have been arrested for crimes. Every time somebody is arrested, their fingerprints are entered into that database.

N.T. (Day 3) p. 73. Counsel for Appellant duly objected to this testimony and the prosecutor agreed that the AFIS database was much broader than just those who had been arrested for crimes. The Court gave a curative instruction, as follows:

> THE COURT: Ladies and Gentlemen, she described AFIS and said it was arrest records, but it's broader than that. There are other fingerprints in that data base other than for people that have been arrested and I want you to understand that because it would be — otherwise improper and prejudice the defendant. So don't view AFIS a just a record of fingerprints of people that have been arrested. I can only say as judge I have been fingerprinted more times in my life for government agencies than I care to remember and I have yet to be arrested.

12

N.T. (Day 3) p. 75-76. Furthermore, the parties stipulated that the print found on the box containing cocaine was not the Defendant's finger print, but Tonya Riston's fingerprint. N.T. (Day 3) p. 77. Thus, the Defendant was not prejudiced by the Trooper's reference to the AFIS, since the only print identified by the AFIS was Riston's.

### iii. State Trooper's testimony regarding finger prints.

Appellant's final assertion of error, is that "when the state trooper was asked if Mr. Bethea;s prints was found and she said she had no personal knowledge the (sic) of the prints." (Concise Statement, ¶ 13). We are not clear on why this statement constitutes reversible error. Trooper Weibel testified that her job was not to identify the finger prints, but only to lift the prints from the evidence. She then sent the print to Corporal Richard Pottorf, Jr., a latent print examiner with the Pennsylvania State Police who, as stipulated, compared the partial latent fingerprint found on clear plastic cellophane outside wrapper of a Camel Cigarette box and found that it matched the right thumb of Tonya Riston. The Defendant's prints were not found on the box. N.T. (Day 3) p. 76-77.

On Cross examination, Counsel for the Appellant asked Trooper Weibel the following:

Q. Do you have any knowledge that any fingerprints from anything you tested in this case comes back to Kyvett Bethea?

MR. BAUER: I'm going to object, your Honor. She can't make that determination.

THE COURT: You only lifted the latents, right, where you thought there were latents?

TROOPER WEIBEL: That's correct.

THE COURT: Do you know the answer to his question?

TROOPER WEIBEL: I do not.

13

N.T. (Day 3) p. 79. Counsel for the Appellant then turned to the witness and again asked her the following:

> Q. [MR. RODGRIGUEZ]: The question is: Does she have any knowledge, yes or no? Do you have any knowledge that any of those prints came back to him?
>
> A. I have no personal knowledge.
>
> Q. Do you have any knowledge – now you say personal knowledge. Do you have knowledge whatsoever that any prints came back to him?
>
> MR. BAUER: I'm going to object, Your Honor. She has no personal knowledge, she can't rely on hearsay to answer that question.
>
> THE COURT: I'm going to sustain the objection. She has no knowledge of any fingerprints. That's all she can testify to.

N.T. (Day 3) p. 79. Counsel asked Trooper Weibel a question which would have had to have been answered by a latent print examiner, not Trooper Weibel, whose job was only to lift the prints and sent them to a print examiner. As she truthfully testified, she did not know whose prints were on the box. There is no merit in Appellant's claim of error as to this testimony.

## III. CONCLUSION

Based on the above, this Court respectfully requests that Appellant's judgment of sentence be affirmed. The Clerk of Court is hereby directed to submit the record to the Pennsylvania Superior Court for its review.

BY THE COURT:

_____ J.
John Garhart, Judge

cc:  Roger Bauer, Esquire -AAG
     Anthony Rodrigues, Esq.

14